**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JENNINGS CONSTRUCTION SERVICES CORPORATION,**

        **Plaintiff,**

**-vs-**          **Case No. 6:10-cv-1671-Orl-28KRS**

**ACE AMERICAN INSURANCE COMPANY,**

        **Defendant.**

_____

# ORDER

Plaintiff Jennings Construction Services Corporation ("Jennings") entered into an "Agreement for Consent Judgment" ("the Consent Agreement") with non-parties AMPAM J.A. Croson Company ("AMPAM"), American Plumbing and Mechanical, Inc. ("American Plumbing"), and Robert Kaiser ("Kaiser") (collectively "Insureds") to settle an underlying contractual and professional negligence dispute that arose in June of 2005. (Compl., Doc. 2, ¶ 28; see also Underlying Answer and Countercl., Ex. A to Compl.). Defendant ACE American Insurance Company ("ACE") was not a party to the Consent Agreement, (Compl. ¶ 30), but it had issued an "Errors and Omissions insurance policy" ("the Policy") that "provide[d] coverage for professional errors and omissions for [the insureds][1] for the period [of] March 1, 2005–March 1, 2006," (id. ¶ 9).

---

[1] For purposes of this Order only, ACE concedes that all of the Insureds are covered by the terms of the Policy. (Motion to Dismiss ("MTD"), Doc. 11, at 2).

Jennings now seeks enforcement of the Consent Agreement against ACE. ACE, however, contends that this case should be dismissed because the Insureds failed to report the claim during the policy period–as specifically required by the Policy–and therefore coverage was precluded and Jennings has no basis to enforce the Consent Agreement against ACE.[2] (MTD at 2-3, 14). As discussed below, Jennings's complaint must be dismissed.

## I. Motion to Dismiss Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

---

[2] This case is now before the Court on ACE's Motion to Dismiss the Complaint (Doc. 11), Jennings's Response (Doc. 37), and ACE's Reply (Doc. 40).

## **II. Background**

The Insureds and Jennings entered into a contract in March 2002 "regarding the design, construction and installation of HVAC systems" for a multi-family residential community. (Compl. ¶¶ 8, 12). In June 2005, AMPAM and American Plumbing filed suit against Jennings in state court. (Id. ¶ 6). Jennings then filed a counterclaim against AMPAM and American Plumbing and a third-party complaint against Kaiser. (Id. ¶ 7). ACE was not added as party because state law prohibited Jennings from suing ACE until Jennings obtained a settlement or verdict against one of the Insureds. (Id. ¶ 32); see § 627.4136(1), Fla. Stat. ("It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy."). Eventually, Jennings and the Insureds settled the underlying dispute and entered into the Consent Agreement, which provided that the Insureds would pay Jennings $5.7 million in damages. (Compl. ¶ 31).

On December 21, 2006–nearly ten months after the Policy expired–the Insureds sent ACE notice of Jennings's claim. (Id. ¶ 13). ACE subsequently denied coverage because the Insureds failed to report Jennings's claim prior to the expiration of the Policy. (Id. ¶ 14).

On the first page, in bold-face capitalized print, the Policy states that "[t]his Policy is a claims made and reported policy. Except as otherwise provided herein, this Policy covers only claims first made against the Insureds and reported to [ACE] during the policy period." (Policy, Ex. B to Compl., at 1). The Policy also contains a detailed "Notice" section that

provides: "The Insureds shall, as a condition precedent to their rights under this Policy, give to [ACE] written notice of any Claim made against the Insureds as soon as practicable, but in no event later than the termination of the Policy Period or, if elected, the Extended Reporting Period." (Id. at 9). Additionally, the Policy provides "Automatic" and "Optional" extended reporting periods. (Id. at 7-8). The "Automatic Extended Reporting Period" is "for a period of 60 days following the effective date of [the] termination or nonrenewal" of the Policy "but only for Claims first made during such 60 days and arising from Wrongful Acts taking place prior to the effective date of such termination or nonrenewal." (Id. at 7). The "Optional Extended Reporting Period" gives the Insureds "the right, upon payment of [an] additional premium . . . , to a continuation of the coverage granted by this Policy for an Optional Extended Reporting Period with a term of one year." (Id. at 7-8).

### III. Analysis

All parties concede that the Insureds failed to report Jennings's claim to ACE prior to the expiration of the Policy, but they disagree as to the effect of that failure. Jennings argues that the Insureds' failure to comply with the notice requirements of the Policy would only release ACE from its obligations under the Policy if the failure substantially prejudiced ACE. (Response, Doc. 37, at 5). ACE asserts that "prejudice to the insurer is irrelevant where the insured is late in reporting a claim under a claims made and reported policy" and that failure to report the underlying claim within the policy period precludes coverage altogether.[3] (MTD

---

[3] The parties also disagree as whether the law of Texas or the law of Florida applies to this case. This issue need not be resolved at this time, however, because the outcome is the same under both Texas and Florida law.

at 14-15).

The gravamen of Jennings's argument is that the claims-made-and-reported provision of the Policy falls into a category of insurance policy provisions called the "cooperation clauses." (Response at 5). Jennings asserts that "these cooperation clauses generally require that the insured take certain affirmative steps to protect not only its interests, but also that of the insurer" but that "[f]ailure to cooperate pursuant to the cooperation clauses is not, in and of itself, a bar to an action by a third party as against an insurer." (Id.). Jennings's argument, however, fails to acknowledge the difference between a "claims-made-and-reported" policy and an "occurrence" policy.

"An occurrence policy is a policy in which the coverage is effective if the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted." Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So. 2d 512, 514 (Fla. 1983) (citing cases). On the other hand, a claims-made-and-reported policy is "a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term. The essence, then, of a [claims-made-and-reported] policy is notice to the carrier within the policy period." Id. (citations and quotations omitted). Therefore, while a failure to timely report a claim under an occurrence policy may not preclude coverage unless prejudice is established, claims-made-and-reported polices "are essentially *reporting* policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches." Id. at 515 (emphasis in original); Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co., 288 S.W.3d 374, 381 (Tex. 2008) ("Because the

[notice and reporting requirement] is considered essential to coverage under a claims-made-and-reported policy, most courts have found that an insurer need not demonstrate prejudice to deny coverage when an insured does not give notice of a claim within the policy's specified time frame." (citing cases)).  Accordingly, Jennings's argument that ACE must show prejudice prior to denying coverage fails.

Jennings also argues that by filing a claim against the Insureds during the pendency of the Policy, ACE's duty to defend the Insureds was automatically triggered regardless of whether the Insureds reported the claim or not.  (Response at 11).  Thus, Jennings asserts that the duty-to-defend provision conflicts with the claims-made provision and that the conflict renders the Policy ambiguous.  (Id. at 11-13).  Jennings's argument is without merit.

As discussed above, written notice to ACE of a claim within the policy period is a condition precedent to the Insureds' rights under the Policy.  ACE's duty to defend does not arise unless and until it receives such notice from the Insureds during the policy period.  The two provisions do not conflict, and the Policy is not ambiguous.  The Insureds failed to comply with the claims-made-and-reported provision of the Policy, and therefore ACE had no obligation with regard to Jennings's claims.

Finally, Jennings asserts that it is unknown whether the Insureds purchased an extended reporting period and therefore it is possible that a set of facts could exist wherein the Insureds complied with the reporting requirements of the Policy.  Significantly, Jennings does not allege that the Insureds actually purchased an extended reporting period; instead, Jennings relies on conjecture about what could have occurred.  Speculative facts not alleged in the complaint are insufficient to defeat a motion to dismiss.

In some circumstances, consent agreements between an insured and a claimant (often termed "Coblentz agreements") will be enforced against the insurer when the insurer has breached its duty to defend. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009); see Coblentz v. Am. Sur. of New York, 416 F.2d 1059, 1063 (5th Cir. 1969). However, "[t]he determination of coverage is a condition precedent to any recovery against an insurer pursuant to a Coblentz agreement." Sinni, 676 F. Supp. 2d at 1324. Because Jennings has failed to plead facts that would establish coverage under the Policy, the Consent Agreement cannot be enforced against ACE, and the Complaint must be dismissed. However, because it might be possible for Jennings to replead its claim in a manner that does state a claim, the Complaint will be dismissed without prejudice and Jennings will be granted leave to amend.

### IV. Conclusion

In accordance with the foregoing, ACE's Motion to Dismiss (Doc. 11) is hereby **GRANTED** and the Complaint (Doc. 2) is **DISMISSED without prejudice.** If Jennings is able to remedy the pleading deficiencies, it may file an Amended Complaint within fifteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 10th day of May, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record